Chief Justice Robertson
delivered the Opinion of the Court.
Withers sued Butts for a breach of -warranty of soundness of a female slave, sold and delivered by the latter to the former, on the 17th of February, 1836.
The jury having found for the defendant in the action, the Circuit Court overruled a motion for a new trial, and rendered judgment in bar.
The only question to be revised is, whether the plaintiff is entitled to a new trial.
The grounds relied on for a new trial are — first, an affidavit showing the discovery of important testimony, after the verdict, and averring, also, the- like discovery of the fact, that the jury was prejudiced against the plaintiff; and, second, the palpable inconsistency between the evidence and the verdict.
The discovery of a witness who could prove material facts which had been litigated, is not, per se, sufficient ground for a new trial; nor is a vague affidavit, expressing a general opinion that the jury was prejudiced, entitled to even as much effect as the discovery of such testimony. But these facts, though insufficient in themselves, may strengthen the claim to a new trial, founded on the evidence on which the jury decided.
Five witnesses testified for the plaintiff; three on the side of the defendant. Two of the plaintiff’s witnesses (his overseer and the overseer’s wife,) stated, that they saw and examined the slave, on the evening of the day of her delivery to the plaintiff; that she was then obviously diseased; that she complained of a pain in one of her sides, and had a “shortness of breath,” and an ashy, husky skin; that she was not required to do any work for four or five days; after which, “she knocked about *330 the house,” and spun and cooked occasionally; but that she continued to complain, and to exhibit the same sickly appearance and shortness of breath; that, at her own instance, she was permitted to hoe corn, in May; but that, in hoeing, she was in the habit of stopping “to rest,” after hoeing twelve or fifteen hills; that she was pregnant, and had her child about the first of July; before which, she had been confined by her disease about a week; that she died about the first of September; never 11 had a well day” after she was delivered to the plaintiff, and died of the disease she had, in their opinion, at that time-.
The plaintiff’s third witness saw the slave, not long after the purchase, when she had an ashy, husky skin, and, in his opinion, was diseased.
His fourth witness saw her frequently after he bought her, and expressed the same opinion, as to her appearance and unsoundness, which had been expressed by his other witnesses.
His fifth and last witness was his family physician; who stated that he was first called to her as a patient in June, 1836, when she appeared as described by the other witnesses; but that he then had some doubt whether her pregnancy might not have been the cause of her apparent unsoundness; but that, after the birth of her child, he was “ convinced ” that her disease was the cachexia Af-ricana or “negro consumption;” which (as he said,) terminates in death; sometimes within a month, sometimes within six months, but is generally an indolent, “protracted” disease.
The first witness for the defendant, who was his brother-in-law, stated that he himself had hired the slave from the defendant, for one year, only one month of which had elapsed when she was sold to the plaintiff; that the plaintiff, without ever having seen her, bought her, at his (the witness’s) instance, and upon his recommendation; that, though the defendant owned other slaves, but no other woman, and had never before sold a slave, and, moreover, had reason to apprehend that, if the plaintiff should buy her, he would send her out of this State, yet he was anxious to sell her, because, as he said, “she did *331 and did not believe that she was so, when she was delivered to the plaintiff. not suit him-” and that he did sell her alone, though she had a child not more than four years old, still retained by him (the defendant;) and that he (the witness) did not know that she was unsound, or had ever been sick,
The defendant’s second witness stated, that he had imown the slave about ten years, and that “he never knew any thing the matter with her.'”
And his third and last witness said, that he had known the slave about two years, and that, “ as far as his knowledge extended, he never knew her to be otherwise than healthy.”
This was all the evidence.
From the facts stated by the plaintiff’s witnesses, the inference is not only probable, but almost certain, in the judgment of any person well acquainted with the peculiar character and phenomena of the cachexia Afri-cana, that the death of the slave was the consequence of that disease. The testimony shows that, from the day she was delivered to the plaintiff to that of her death, she exhibited some of the peculiar symptoms which in- . variably characterize the negro consumption, from its incipient to its final state. As to the cause of her death, there is no conflict of evidence.
The only apparent collision between the plaintiff’s witnesses and those of the defendant, is as to the question whether, at the time of the sale, the slave was afflicted with the disease which terminated in her death. And, on that point, a proper analysis of the testimony must lead to the conviction, that there is scarcely any discrepancy.
If the slave was diseased, as described by the plaintiff’s witnesses, on the day of the sale,, the facts exhibited leave but little room for a rational doubt that the same disease continued to progress, until it terminated in death.
Then, the only question, respecting which the jury could have hesitated, was, whether the plaintiff’s witnesses, who testified as to the condition of the slave on the day of her delivery to the plaintiff, told the truth in what they stated concerning that fact. Their testimo *332 ny, as to that matter, is fortified by the progress of the disease, as described by other witnesses, and especially by the physician; and is not necessarily inconsistent with any facts stated by any of the defendant’s witnesses, whose testimony is general, and exhibits no material facts, but mere opinions only.
The second and third witnesses for the defendant may not have known that the slave was unsound, and nevertheless, she may have been, and probable was, in the condition described by the plaintiff’s witnesses. Neither of those two witnesses intimated, either that he had observed the slave at the time, or about the time, of the sale, or that she had not an ashy and a husky skin and “a shortness of breath.” Nor does the first witness for defendant suggest that none of those symptoms of disease had ever been observed by him. His opinion, therefore, that she was sound, is entitled to but little, if any, influence against the positive facts affirmed by the plaintiff’s witnesses; and the more especially, as he advised the plaintiff to purchase the slave, even though he himself had hired her, and the defendant sold her under the significant circumstances detailed in his testimony.
And, moreover, if the slave had been in the condition described by the plaintiff’s witnesses, at the time of the sale, the defendant’s witnesses might not have inferred from her appearance, that she was unsound or fatally diseased. The negro consumption is an insidious disease. In its incipiency, it eludes the observation of the unskilful, and even sometimes that of the most skilful persons. But the continued progress of the first questionable symptoms in this case, can scarcely leave any doubt of the true character of those symptoms, from their origin to their final issue in death.
And the fact that the defendant’s first witness said nothing about the ashy or husky skin, or the shortness of breath, or the pain in the side, but only stated, as a general opinion, that the slave was, as he believed, sound, tends, under all the circumstances, rather to show that he knew that she did exhibit those symptoms of disease, but that, nevertheless, he did not consider *333 them as any evidence of permanent or dangerous disease.
It seems to us, therefore, that the jury was hardly authorized to disbelieve the facts stated by the plaintiff’s witnessess, and that, believing them, it was their duty to find for him, and not against him.
This consideration, and the affidavits as to discovery and prejudice, when all combined, bring us to the conclusion that justice has not been done, and that the plaintiff should have, another trial; when the facts may, perhaps, be materially changed on each side.
Judgment reversed, and cause remanded for a new trial.